UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20521-BLOOM/Otazo-Reyes

BEVERLEY B. SCHOTTENSTEIN,
Individually and as Co-Trustee Under the
Beverley B. Schottenstein Revocable
Trust U/A/D April 5, 2011, as Amended,

    Petitioner,

v.

J.P. MORGAN SECURITIES, LLC;
EVAN A. SCHOTTENSTEIN; and
AVI E. SCHOTTENSTEIN,

    Respondents.
_____/

**ORDER ADOPTING IN PART MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court upon Respondents Evan A. Schottenstein and Avi E. Schottenstein's (collectively, "Respondents" or "Schottensteins") Motion to Enforce Settlement, ECF No. [20] ("Motion to Enforce") and Motion for an Order Referring Case to Mediation and Staying all Deadlines, ECF No. [61] ("Motion for Mediation"). With regard to the Motion to Enforce, Petitioner Beverly B. Schottenstein ("Petitioner" or "Mrs. Schottenstein") filed a Response in Opposition, ECF No. [25] ("Response"), to which Respondents filed a Reply, ECF No. [38] ("Reply"). With regard to the Motion for Mediation, Petitioner filed a Response in Opposition, ECF No. [62], to which Respondents filed a Reply, ECF No. [63].

The Court referred the Motion to Enforce to Magistrate Judge Alicia Otazo-Reyes for a Report and Recommendation. ECF No. [31]. After an evidentiary hearing held before Magistrate Judge Otazo-Reyes on the Motion to Enforce, the Parties filed their respective post-hearing briefs,

ECF Nos. [52], [53]. On January 28, 2022, Magistrate Judge Otazo-Reyes issued a Report and Recommendation ("R&R"), recommending that the Motion to Enforce be denied. *See* ECF No. [58]. Respondents timely filed Objections, ECF No. [59] ("Respondents' Objections"), arguing that the Motion to Enforce should be granted. To date, Petitioner has not filed a response to Respondents' Objections.

The Court has conducted a *de novo* review of the R&R and the record in this case in accordance with 28 U.S.C. § 636(b)(1)(C). *See Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) (citing 28 U.S.C. § 636(b)(1)). For the reasons set forth below, the Court adopts the R&R in part consistent with this Order. In addition, for the reasons set forth below, the Motion for Mediation is denied.

## I.     BACKGROUND

On February 5, 2021, Petitioner filed her Petition for Entry of a Final Judgment Confirming Arbitration Award and Awarding Damages and Other Relief, ECF No. [1] ("Petition"). Petitioner sought to confirm the decision of a Financial Industry Regulatory Authority ("FINRA") arbitration panel that awarded her damages on her claims for constructive fraud, common law fraud, and elder abuse ("Award"). *Id*. at 1-2. The Award required Respondent Evan Schottenstein to pay Petitioner $9,000,000.00 in compensatory damages plus interest, $172,630.50 in costs, and one-half of Petitioner's attorney's fees. *Id*. at 2. The Award required Respondent Avi Schottenstein to pay Petitioner $602,251.00 in compensatory damages plus interest. *Id*. On March 8, 2021, Respondents filed a Motion to Vacate the Arbitration Award, ECF No. [6] ("Motion to Vacate"). On March 18, 2021, the Parties filed a Stipulated Motion for Extension of Briefing Deadlines, ECF No. [14] ("Stipulated Motion"). In the Stipulated Motion, the Parties stated that they had reached an "oral agreement concerning the amount of a settlement sum to be paid by [R]espondents to [P]etitioner

to resolve [the Petition and Motion to Vacate]." *Id*. at 1. The Stipulated Motion stated that a "written settlement agreement [would] be prepared, revised, agreed upon, and executed by March 24, 2021." *Id.* The Stipulated Motion further stated that, if "[R]espondents fail[ed] to timely make the settlement payment, the settlement agreement [would] be null and void and [the Parties would] return to their present postures and positions in [the] action." *Id*. at 1-2. However, if Respondents timely made the settlement payment, Petitioner and Respondents would "stipulate to the voluntary dismissal of [the] proceeding." *Id*. at 2.

On March 19, 2021, the Court administratively closed the case without prejudice, pending the filing of a settlement agreement for the Court's "consideration and/or appropriate dismissal documentation." ECF No. [15] at 1. The Court further stated that, should Petitioner and Respondents "fail to finalize a written settlement agreement and comply with the agreed payment schedule, they [may] move to reopen the case and proceed with the claims asserted in [the] action." *Id*. On June 8, 2021, Petitioner filed her Motion to Reopen the Case, stating that "[a]fter extensive negotiations, [the Parties] have been unable to reach agreement on the provisions and content of a written settlement agreement, and no written settlement agreement has been finalized." ECF No. [16] at 3. The Court subsequently granted the Motion to Reopen the Case. *See* ECF No. [18].

On June 29, 2021, Respondents filed the instant Motion to Enforce, arguing that Petitioner and Respondents settled the case on two occasions – on March 18, 2021, and on May 6, 2021 – and requesting that the Court enforce the purported settlement. *See* ECF No. [20] at 1. On July 16, 2021, Petitioner filed her Response, arguing that Petitioner and Respondents did not reach a settlement agreement on either date. *See generally* ECF No. [25]. On July 28, 2021, Respondents filed their Reply. *See generally* ECF No. [38].

On January 14, 2022, Magistrate Judge Otazo-Reyes issued her R&R, recommending that the Motion to Enforce be denied. *See* ECF No. [58]. The R&R states that: (1) the Parties did not reach an enforceable, oral settlement agreement on March 6, 2021; (2) the Parties did not reach an enforceable, oral settlement agreement on May 6, 2021; and (3) Mr. Guy Burns' ("Mr. Burns") interactions with Mr. Peter Fruin ("Mr. Fruin") did not bind Petitioner. *See id*. On January 28, 2022, Respondents filed their Objections, arguing that Magistrate Judge Otazo-Reyes erred because: (1) Mr. Burns did have the authority to bind Petitioner; (2) Mr. Burns did not tell Respondents' Counsel that his authority was limited; (3) Mr. Patrick Lannon ("Mr. Lannon") did authorize the sending of Petitioner's April 30 Settlement Draft; (4) the Court should receive additional evidence on the authority of Petitioner's Counsel; (5) Magistrate Judge Otazo-Reyes did not incorporate case law recognizing Florida's strong policy favoring settlements; (6) the R&R's conclusions on attorney authority will discourage, rather than encourage, settlements; and (7) Respondents' March 19 Settlement Draft did not omit a penalty for non-payment. *See generally* ECF No. [59].

On January 28, 2022, Respondents also filed the instant Motion for Mediation. ECF No. [61]. Respondents request that the Court refer this case to mediation and stay all deadlines while such mediation takes place. *See id.* at 1. Petitioner opposes the Motion for Mediation, arguing that mediation will serve no legitimate purpose other than to delay the case and force Petitioner to expend additional resources. *See* ECF No. [62]. On February 18, 2022, Respondents' Reply followed. *See* ECF No. [63].

## II. LEGAL STANDARD

### a. Objections to Magistrate Judge's R&R

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)) (alterations omitted). The objections must also present "supporting legal authority." S.D. Fla. L. Mag. J.R. 4(b). The portions of the report and recommendation to which an objection is made are reviewed *de novo* only if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). If a party fails to object to any portion of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784 (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)); *see also Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001). A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1).

### b. Court-Annexed Mediation

Local Rule 16.2 enumerates mediation procedures in this District. Local Rule 16(2) states, in relevant part:

> It is the purpose of the Court, through adoption and implementation of this Local Rule, to provide an alternative mechanism for the resolution of civil disputes leading to disposition before trial of many civil cases with resultant savings in time and costs to litigants and to the Court, but without sacrificing the quality of justice to be rendered or the right of the litigants to a full trial in the event of an impasse following mediation. Mediation also enables litigants to take control of their dispute and encourages amicable resolution of disputes.

Local Rule 16.2(a)(2).

**III. ANALYSIS**

    **a. Respondents' Objections**

Respondents raise seven objections to the R&R: (1) Mr. Burns did have the authority to bind Petitioner; (2) Mr. Burns did not tell Respondents' Counsel that his authority was limited; (3) Mr. Lannon did authorize the sending of Petitioner's April 30 Settlement Draft; (4) the Court should receive additional evidence on the authority of Petitioner's Counsel; (5) Magistrate Judge Otazo-Reyes did not incorporate case law recognizing Florida's strong policy favoring settlements; (6) the R&R's conclusions on attorney authority will discourage, rather than encourage settlements; and (7) Respondents' March 19 Settlement Draft did not omit a penalty for non-payment. *See* ECF No. [59] at 3. The Court addresses each objection in turn.

    *i. Mr. Burns Did Not Have the Authority to Bind Petitioner*

Respondents first argue that the R&R erred in concluding that Petitioner's Counsel, Mr. Burns, did not have the authority to bind Petitioner. *See* ECF No. [59] at 4-5. Respondents argue that Mr. Burns had the authority to make offers and negotiate on behalf of Petitioner and therefore had the authority to bind Petitioner. *See id.* Respondents argue that the R&R specifically fails to consider *Vital Pharmaceuticals, Inc. v. S.A.N. Nutrition Corp.*, No. 06-60646-CIV, 2007 WL 1655421 (S.D. Fla. 2007), which determined that attorneys who have the authority to make offers on behalf of their client also have the authority to bind their client.[1]

The Court agrees with Respondents to the extent that *Vital Pharmaceuticals* establishes that attorneys who have the authority to make offers on behalf of their clients also have the authority to bind their clients. *See* 2007 WL 1655421, *5. However, in this case, the R&R expressly notes that in negotiating the settlement agreement, Mr. Burns "deferred" to Mr. Lannon

---

[1] Respondents also cite *Welch v. North Am. Tank Line, Inc.*, No. 8:06–CIV–2340–T–17–MAP, 2008 WL 3982394, at *3 (M.D. Fla. Aug. 25, 2008), for the same proposition. *See* ECF No. [59] at 4.

and told Respondents' Counsel that any settlement between the Parties would be subject to Mr. Lannon's approval. *See* ECF No. [58] at 22-23 (citing ECF No. [49] at 114-18). Based on Mr. Burns' sworn testimony, Mr. Burns did not have the authority to make offers that would have the legal effect of binding Petitioner. At most, any accepted "offer" was subject to Mr. Lannon's approval. *See* ECF No. [49] at 114-18. Therefore, the holding in *Vital Pharmaceuticals*, 2007 WL 1655421, at *5, is inapposite as that case only pertains to attorneys who have the authority to make offers, not "offers" that require further approval from other attorneys.

> ii. *Mr. Burns Told Respondents' Counsel That His Authority Was Limited*

Respondents argue that the R&R erred in finding that Mr. Burns told Respondents' Counsel that his authority was limited. *See* ECF No. [59] at 5. Mr. Burns' testimony states, in relevant part, "I think I made that clear to Mr. Fruin, that anything would have to pass Mr. Lannon's approval." *Id.* (quoting ECF No. [49] at 111-12). Therefore, Respondents argue that Mr. Burns merely "think[s]" that he told Respondents' Counsel that his authority was limited, and that the R&R's finding of fact that Mr. Burns definitively told Respondents' Counsel that his authority was limited is erroneous. *See id.* at 5-6. Respondents further contend that they were unaware that Mr. Lannon was serving as Petitioner's "general" counsel and believed that Mr. Lannon was serving in a limited capacity as Petitioner's "tax" counsel. *See id.* at 6. Respondents point to an email from Petitioner's Counsel, Mr. Scott Ilgenfritz ("Mr. Ilgenfritz"), referring Respondents' Counsel to Mr. Burns rather than Mr. Lannon for further communication in this case. *See id.* According to Respondents' argument, if Mr. Lannon was indeed overseeing the matter and Mr. Burns had only limited authority, Mr. Ilgenfritz would have referred Respondents' Counsel to Mr. Lannon. *See id.* Respondents also note that it was reasonable for Respondents' Counsel to assume that Mr. Burns' authority was not limited because Mr. Burns is a named partner at his law firm. *See id.* at 6, n.1.

Case 1:21-cv-20521-BB   Document 65   Entered on FLSD Docket 02/23/2022   Page 8 of 17

Case No. 21-cv-20521-BLOOM/Otazo-Reyes

Respondents' arguments are unavailing. Based on the evidence before the Court, the Court is not persuaded that the R&R erred in finding that Mr. Burns informed Respondents' Counsel that his authority was limited. While Respondents attempt to draw a distinction between Magistrate Judge Otazo-Reyes' finding and Mr. Burns' testimony, the Court considers the term "think" in Mr. Burns' testimony to be immaterial in this context and finds that Mr. Burns' overall testimony sufficiently supports the finding that Mr. Burns told Respondents' Counsel that his authority was limited. *See* ECF No. [49] at 114-18.

Further, although Respondents direct the Court's attention to Mr. Lannon's limited role as tax counsel, Mr. Ilgenfritz's decision to refer Respondents' Counsel to Mr. Burns, and Mr. Burns' status as a named partner, the Court is not persuaded. There is no indication that Mr. Lannon could not have assumed the dual role of tax counsel and general counsel. It is apparent that one's expertise in tax law does not preclude one's ability to serve as general counsel. Further, Mr. Ilgenfritz's decision to refer Respondents' Counsel to Mr. Burns rather than Mr. Lannon could have been for a variety of reasons. Respondents' argument that Mr. Ilgenfritz's email somehow indicates Mr. Burns' full authority to settle the case is too speculative for the Court to find that Mr. Burns had full authority. Finally, Mr. Burns' status at his law firm as a named partner is also insufficient for this Court to find that Mr. Burns therefore had full authority to settle the case or that Respondents could reasonably believe that Mr. Burns had full authority, especially when Mr. Burns' sworn testimony indicates otherwise. In sum, Respondents' argument on this matter is unpersuasive.

### iii. Mr. Lannon Did Not Authorize the April 30 Settlement Draft

Respondents argue that the R&R erred in finding that Mr. Lannon did not authorize the sending of the April 30 Settlement Draft. *See* ECF No. [59] at 7-8. Respondents' contention relies

8

on portions of Mr. Burns' testimony indicating that the April 30 Draft was approved by Mr. Lannon and also Mr. Burns' email stating that the April 30 Draft included "our" edits rather than "my" edits, suggesting that Mr. Lannon approved the April 30 Draft. *Id.* (citing ECF Nos. [47-21], [49] at 116, 118). Respondents further contend that if Mr. Lannon approved the April 30 Draft, then the Parties reached an agreement because the subsequent May 6 Draft only changed two words from the April 30 Draft, the two words were not an essential part of the settlement, and the May 6 Draft was effectively an acceptance of the April 30 Draft. *See id.* at 8-9.

Respondents' arguments are unavailing. When viewing Mr. Burns' testimony in its full context, rather than the three segments of Mr. Burns' testimony on which Respondents focus, it is apparent that Mr. Burns repeatedly testified that the April 30 Draft was dependent on Mr. Lannon's final approval. *See* ECF No. [49] at 116-18. For instance, the transcript states, in relevant part:

> Q So if we had accepted every single change in your April 30th email, then we would have had full agreement on the language of the agreement, correct?
> A We would have had full agreement on the language if Mr. Lannon said you had full agreement, and I don't know what he would have said.
> Q Before you sent this agreement on April 30th, Mr. Lannon gave you authority to send it, did he not?
> A I believe so.
> Q So then if we accepted it, we would have had 100 percent agreement on the language, correct?
> A Again, I understand your argument, but it was dependent upon Mr. Lannon's decision. So that is all I can tell you.

*Id.* at 116. Based on the testimony, the Court is not convinced that Magistrate Judge Otazo-Reyes erred in finding that "Mr. Lannon provided Mr. Burns with revisions but was not involved in authorizing Mr. Burns' exchange of draft settlement agreements with Mr. Fruin." ECF No. [58] at 16, ¶ 52.

Further, even if Respondents established that Mr. Lannon approved the April 30 Draft, the May 6 Draft's insertion of two words "in part" is not immaterial. Petitioner's Counsel made clear to Respondents' Counsel that the phrase was related to a tax provision that was critically important

9

to Petitioner. *See* ECF No. [49] at 97, 111-12. Respondents provide no legal authority suggesting that the tax treatment of settlement proceeds is an immaterial part of a settlement provision. *See* ECF No. [59] at 8-9.[2] Given the importance of the phrase, the May 6 Draft appears to be a counteroffer rather than an acceptance. As such, Respondents' argument on this issue is ultimately unavailing even if Mr. Lannon approved the sending of the April 30 Draft.

*iv. Additional Evidence on Petitioner's Counsel's Authority Is Not Necessary*

Next, Respondents argue that if the Court has doubts about the authority of Mr. Burns or the authority of Mr. Burns acting in concert with Mr. Lannon, the Court should require limited discovery on "all communication concerning settlement, including privileged communications, that were sent between April 27, 2021 at 8:49 AM ET and May 10, 2021 at 3:01 PM ET." ECF No. [59] at 10. In support, Respondents cite *B.T. by and through Tompson v. Target Corp.*, No. 17-60871-TORRES, 2017 WL 4868788, at *2 (S.D. Fla. Oct. 27, 2017), where the court determined that when a party argues that its counsel lacked authority to enter into a settlement on its behalf, the party waives attorney-client privilege as to that issue. *See* ECF No. [59] at 9.

The Court declines the invitation to allow limited discovery into internal communication among Petitioner's Counsel. Given the fulsome record in this case, which includes sworn testimony from Mr. Burns, Mr. Lannon, and Mr. Ilgenfritz, *see* ECF No. [49], the Court is not persuaded that additional discovery is necessary. Further, to the extent that Respondents rely on *B.T.*, 2017 WL 4868788, at *2, the Court notes that *B.T.* only allowed evidentiary hearings for the limited purpose of determining the attorney's settlement authority. The court in *B.T.* did not require counsel to turn over internal and external communications. Since an evidentiary hearing has

---

[2] Respondents cite *In re Rolsafe International, LLC*, 477 B.R. 884, 903 (Bankr. M.D. Fla. 2012), *Robbie v. City of Miami,* 469 So. 2d 1384, 1385 (Fla. 1985), and *Warrior Creek Development, Inc. v. Cummings*, 56 So. 3d 915, 916 (Fla. 2d DCA 2011). However, the three cited cases do not directly support Respondents' contention that tax provisions are not material aspects of a settlement agreement.

10

already taken place in this case, the Court does not see the need for additional hearings or discovery into internal communications among Petitioner's Counsel. As such, Respondents' request is denied.

> v. *Case Law on Florida's Policy Favoring Settlements is Inapposite*

Respondents argue that the R&R erred by not considering case law on Florida's strong public policy in favor of enforcing settlements. *See* ECF No. [59] at 10-11 (citing *Welch v. North Am. Tank Line, Inc.*, No. 8:06-CIV-2340-T-17-MAP, 2008 WL 3982394, at *3 (M.D. Fla. Aug. 25, 2008); *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985); *In Re Rolsafe International, LLC*, 477 B.R. 884, 903 (Bankr. M.D. Fla. 2012)). The Court agrees that Florida has a strong public policy in favor of enforcing settlements. However, Florida's public policy and supporting case law are inapposite to this case because there was no settlement reached here. The record makes evident that as of March 18, 2021, the Parties had not yet agreed on the terms of the settlement, *see* ECF No. [58] at 16-19, and as of May 6, 2021, the Parties had not executed a binding settlement agreement containing terms to which they had mutually assented, *see id.* at 21-22. Therefore, Respondents' argument is not persuasive.

> vi. *R&R's Conclusion on Attorney Authority Will Not Discourage Settlements*

Respondents also argue the R&R's conclusion will discourage future litigants from reaching settlements, which will undermine Florida's strong public policy favoring the enforcement of settlements. *See* ECF No. [59] at 11. According to Respondents, attorneys will be able to walk away from settlements that they dislike by falsely claiming that the negotiating attorney did not have the authority to enter into settlement agreements. *See id.* ("[T]he [R&R's] conclusions will encourage parties to engage in future settlement discussions with their fingers crossed and one arm tied behind their backs in the hopes of gaining an escape hatch if negotiations do not go as planned.").

11

The Court certainly agrees with Respondents' premise that Florida has a strong public policy favoring settlements. Moreover, courts should consider whether the law as applied will operate to encourage or discourage future settlements. However, the Court is not persuaded that the R&R's conclusion will have the effect of discouraging settlements. In order for attorneys to use the metaphorical "escape hatch," attorneys would have to falsely claim that they are not authorized to enter into settlement agreements. As Respondents correctly note elsewhere, such attorneys would have effectively waived the right to attorney-client privilege on the issue and be subject to evidentiary hearings where they would have to perjure themselves. *See* ECF No. [59] at 9 (citing *B.T.*, 2017 WL 4868788, at *2). Considering the risks associated with using the "escape hatch," Respondents' concern that members of the legal profession would brazenly violate their professional responsibility as officers of the court is misplaced.

> vii. *March 19 Settlement Draft Did Not Omit a Penalty for Non-Payment*

Finally, Respondents argue that the R&R erred in finding that:

In the [March 24] letter, Mr. Ilgenfritz objected to: the one-sided, general release by Mrs. Schottenstein in favor of the Schottensteins; the one-sided confidentiality provision; the one-sided non-disparagement provision; the no admission of liability provision; and the dismissal with prejudice provision. *Id*. **Further, Mr. Ilgenfritz objected to the draft's omission of a provision detailing the consequences of Respondents' failure to make payment within seven days**. *Id*. **Mr. Ilgenfritz modified the draft accordingly**. *Id*.

ECF No. [59] at 12 (quoting ECF No. [58] at 12-13 (emphasis added)). According to Respondents, the provision detailing the consequences of Respondents' failure to make payment within seven days was already included in Respondents' March 19 Settlement Draft. *See id.* (quoting ECF No. [43-10] at 10, ¶ 2). Mr. Ilgenfritz's March 24 letter did not object to the March 19 Draft's supposed omission of the provision at issue. *See id.* at 12-13 (citing ECF No. [43-12] at 2). Mr. Ilgenfritz only made minor revisions to the existing provision. *See id.* at 13 (citing ECF No. [43-12] at 6, ¶ 2).

The Court agrees with Respondents. As Respondents rightly note, the R&R's finding appears to be based on Mr. Ilgenfritz's mistaken testimony on this issue. *See* ECF No. [49] at 88. Respondents also correctly argue that this particular finding of fact does not implicate the more substantive objections noted above. *See* ECF No. [59] at 12. Therefore, the Court sustains Respondents' objection on this issue only and declines to adopt the R&R regarding this specific finding. Nevertheless, the Court finds Magistrate Judge Otazo-Reyes' R&R to be correct in all other respects and adopts its ultimate determination that the Motion to Enforce should be denied.

### b. Motion for Mediation

Respondents request that the Court direct the Parties to mediation and stay all deadlines. *See* ECF Nos. [59] at 13, [61]. Respondents argue that mediation will "save this Court a tremendous amount of time and resources by eliminating the need to rule on the numerous complex matters and motions before it." ECF No. [63] at 4. Respondents argue that if the Court required mediation, then the Court would not have to conduct a *de novo* review of the instant R&R and will not have to address the Motion to Enforce. *See id.* On the other hand, if the Court denied the Motion for Mediation, then the Court would have to address Petitioner's Petition and Respondents' Motion for Vacate. *See id.*

Further, Respondents argue that Local Rule 16.2 requires court-annexed mediation for all civil cases except for certain types of cases not relevant here. *See id.* at 4-5. In addition, Respondents argue that Respondent Evan Schottenstein does not have the financial resources to pay the full FINRA award and will have no choice but to declare bankruptcy if the case does not settle through mediation, which will further delay any relief that Petitioner will ultimately receive. *See id.* at 5. Next, Respondents argue that the Parties were close to a settlement, and the "biggest obstacle to settlement in this matter is [that] Petitioner has too many cooks [(i.e., attorneys)] in the

13

kitchen." *Id.* at 6. Respondents argue that once the Court orders mediation to take place, the mediator will "require Petitioner and her [legal] team to honor their commitments." *Id.* at 7. Lastly, in the event that the Court grants Respondents' Motion for Mediation, Respondents request that Petitioner be required to keep any financial disclosures confidential. *See id.* at 7-8.

Petitioner opposes mediation. Petitioner argues that Local Rule 16.2(a)(2) requires mediation only as "an alternative mechanism for the resolution of civil disputes leading to disposition before trial . . . with resultant savings in time and costs to litigants and the Court," and that mediation is intended to preserve "the right of the litigants to a full trial in the event of an impasse . . . ." ECF No. [62] at 3-4. Petitioner argues that because this proceeding is a miscellaneous proceeding to confirm a FINRA arbitration award, there will not be a full trial and, as a result, a court-annexed mediation is not warranted. *See id.* Petitioner contends that mediation will only delay the final resolution of the case and require Petitioner to needlessly expend more resources. *See id.* at 4-5.

The Court agrees with Petitioner. The Eleventh Circuit has determined that a proceeding to confirm a FINRA arbitration award under 9 U.S.C. § 9 is a summary proceeding. *See Cullen v. Paine Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir. 1989). "The statute does not allow courts to roam unbridled in their oversight of arbitration awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in specific ways." *Robbins v. Day*, 954 F.2d 679, 682 (11th Cir. 1992) (citations and internal quotation marks omitted). Based on Eleventh Circuit precedent, a full trial will likely not be appropriate to address Petitioner's Petition. It logically follows that mediation – which is intended to serve as "an alternative mechanism for

the resolution of civil disputes leading to disposition before trial" – is not warranted. Local Rule 16.2(a)(2).[3]

Furthermore, Respondents' arguments are unpersuasive. First, Respondents' argument that mediation will save the Court time and resources is partly moot since the Court has reviewed the R&R and the Motion to Enforce in this Order. In addition, the Court is ready and willing to address Petitioner's Petition and any forthcoming Motion to Vacate.[4] Given Respondents' insistence that the case was or is close to settlement, the Court also recognizes the possibility that the Court may not need to expend more time and resources if the Parties choose to settle.

Second, Respondents' reference to Local Rule 16.2 is unavailing because mediation is premised on a full trial as stated above. Even if the Court were to presume that a full trial should take place despite Eleventh Circuit precedent instructing the Court otherwise, Respondents overlook the Local Rule's provision on the timing of any court-annexed mediation for cases that are not is expressly exempt from court-annexed mediation. In the event that there is to be a trial, mediation is to take place "no later than sixty (60) days before the scheduled trial date which shall be established no later than the date of the issuance of the order of referral." Local Rule 16.2(d)(1)(A). In other words, the Local Rules do not require court-annexed mediation to take place at this juncture before the Court has determined a trial date. The Court will separately require mediation in the unlikely event that the case proceeds to trial, but at this point, Respondents' reliance on the Local Rules is unpersuasive.

---

[3] The Court's previous Order Requiring Scheduling Report, which became moot following the Court's subsequent Order Administratively Closing Case, contemplated a trial. *See* ECF Nos. [4], [15]. The Parties jointly submitted that "no trial or discovery is necessary." ECF No. [19] at 1. Based on the evidentiary record that has since been developed and the issues presented in the Parties' briefings, the Court is persuaded that a trial is not necessary.
[4] As a procedural matter, Respondents' Motion to Vacate, ECF No. [6], has been denied as moot. *See* ECF No. [15]..

15

Case No. 21-cv-20521-BLOOM/Otazo-Reyes

Third, the Court is not persuaded by Respondents' contention that the Court should require mediation because Respondent Evan Schottenstein will have to declare bankruptcy if the Court does not require mediation. Petitioner is the master of her case, and she has decided to oppose mediation despite being aware of the risks of an Order confirming the arbitration award. The Court sees no reason to force Petitioner to take an alternative course of action based on Respondents' representation of Petitioner's best interest. As alluded to above, Petitioner may, of course, settle the case outside of mediation and avoid Evan Schottenstein's bankruptcy if she chooses to do so, and court-annexed mediation is not required for further settlement negotiations.

Lastly, Respondents' argument that Petitioner has too many attorneys is not a proper ground to require mediation. Petitioner is free to choose who will represent her in this case, and the quality and quantity of her legal representation have no bearing on this Court's reasoning. As such, the Motion for Mediation is denied.[5]

## IV.    CONCLUSION

In sum, upon a comprehensive review, the Court finds Magistrate Judge Otazo-Reyes' R&R to be well reasoned and correct on all matters other than Respondents' final objection. The Court agrees with the R&R in its ultimate determination that Respondents' Motion to Enforce should be denied. The Court also concludes that Respondents' Motion for Mediation should be denied.

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. The R&R, **ECF No. [58]**, is **ADOPTED IN PART**.

2. Respondents' Motion to Enforce, **ECF No. [20]**, is **DENIED**.

3. Respondents' Motion for Mediation, **ECF No. [61]**, is **DENIED**.

---

[5] Respondents' request that the Court require Petitioner to keep any financial disclosures confidential in the event that the Court requires mediation is denied as moot.

4. Respondents shall answer Petitioner's Petition, ECF No. [1], on or before **March 7, 2022**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 20, 2022.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record