

**Jonathan J. Brennan**
DIRECT  646.609.9299
EMAIL   jbrennan@maynardcooper.com

June 24, 2020

### REQUEST FOR ISSUANCE OF SUBPOENA

**By FINRA DR Portal**

Ms. Donna Greenspan Solomon, Esq., Chair
c/o Lisa Lasher, FINRA Case Administrator
FINRA Dispute Resolution
Boca Center Tower 1
5200 Town Center Circle, Suite 200
Boca Raton, FL 33486

  Re: **Beverley B. Schottenstein v. J.P. Morgan Securities, LLC, et al. (FINRA Dispute Resolution Case No. 19-02053)**

Dear Ms. Solomon:

  Pursuant to Rule 12512 of the FINRA Code of Arbitration Procedure (the "Code"), please consider this letter a motion by Respondents Evan A. Schottenstein and Avi E. Schottenstein ("Respondents") for the issuance of the enclosed subpoena for the production of documents to **Wells Fargo Bank, N.A.** ("Wells Fargo").  By this subpoena, Respondents seek documents concerning the termination of Alexis Schottenstein ("Alexis") from Wells Fargo over allegations that she enrolled clients in online statement delivery without their authorization or approval.  Such behavior is strikingly similar to what has been alleged by Claimant in this case.  The proposed subpoena is attached to this motion as **Exhibit A**.

  In her Statement of Claim Claimant alleges that she was enrolled in electronic delivery of her J.P. Morgan Statements without her authorization or approval and that her online statements were sent to a fictitious email address (bevschottenstein@aol.com).  *See* Statement of Claim at 10-11 ("Sometime in the second half of 2016, Evan Schottenstein and/or Avi Schottenstein directed J.P. Morgan to stop mailing monthly statements and other written communications to Mrs. Schottenstein and to only deliver monthly statements and other written communications related to her Trust Account to her at the fictitious email address that had been created for her. . . .  Evan Schottenstein and Avi Schottenstein knew that their grandmother did not know of the fictitious email address that they had created.")  Relevant excerpts from the Statement of Claim are attached to this motion as **Exhibit B**.

  This claim echoes an allegation made six months earlier in Claimant's January 6, 2019 "Amendment to My Will and Trust" letter (the "January 6, 2019 Letter").  In the January 6, 2019 Letter, Claimant alleges she was enrolled in electronic delivery of her J.P. Morgan Statements without her permission.  *See* January 6, 2019 Letter at paragraph 1.5 ("Evan created an online Banking access without my permission for my previous American Express Account and JP Morgan Account and gave

Ms. Donna Greenspan Solomon, Esq.
June 24, 2020
Page 2

access to his family, and put me on paperless statement.")  A copy of the January 6, 2019 Letter is attached as **Exhibit C**.

Respondents Evan and Avi Schottenstein deny these allegations of improper and unauthorized enrollment of claimant in electronic delivery of her J.P. Morgan account statements.  They further deny creating the bevschottenstein@aol.com email address or using this address for any fraudulent activity against Claimant.  This behavior, however, does sound familiar.  It sounds like the very behavior that led to the termination of Alexis when she worked at Wells Fargo.

As set forth in Respondent Evan Schottenstein's Statement of Answer, Alexis is Claimant's granddaughter and Respondents' cousin.  Finding documents that led her to believe her inheritance from Claimant was being reduced, Alexis blamed Respondents and became the driving force behind this arbitration.  As admitted in the Statement of Claim, Alexis downloaded Claimant's J.P. Morgan account statements, reviewed some statements with Claimant, and delivered the January 6, 2019 Letter to J.P. Morgan without Claimant's prior knowledge or authorization.  *See* Statement of Claim (**Exhibit B**) at 12-13; Claimant's Response to Respondents, Evan A. Schottenstein and Avi E. Schottenstein's, First Request for Production of Documents and Information ("Claimant's Discovery Response") at RFI Nos. 13-14.  Relevant Excerpts from Claimant's Discovery Response are attached as **Exhibit D**.  Respondents believe that Alexis was fired from Wells Fargo for the very same behavior she is helping Claimant allege here, namely the enrollment of clients in electronic delivery of account statements without their authorization or approval.

Between 2009 and 2013, Alexis was employed by Wells Fargo in its Largo Mall Branch Office in Largo, Florida.  One of her job responsibilities at Wells Fargo was to enroll clients in online account statement delivery.  For a time, it was believed that Alexis was quite good at this job and enrolled many Wells Fargo clients in online statement delivery.  As time passed, however, numerous customers began to complain about having been enrolled in online statement delivery without their knowledge or authorization.  Following these complaints, it is believed that Wells Fargo terminated Alexis.

Given the above, Respondents respectfully request the issuance of a subpoena to Wells Fargo seeking four categories of documents: (1) customer complaints concerning or involving Alexis, (2) documents concerning the reason(s) for her separation or termination from Wells Fargo, (3) documents reflecting any investigation conducted into her actions while employed by Wells Fargo, and (4) documents concerning the email address bevschottenstein@aol.com, including any documents sent to or from that email address.

Request Nos. 1, 2, and 3 are warranted given the striking similarities between Alexis's alleged actions at Wells Fargo and the allegations made against Respondents in this case.  If Alexis was found by Wells Fargo to have enrolled customers in online statement delivery without their knowledge or authorization, then documents at Wells Fargo will likely contain information about how she did this.  Did she create fictitious email addresses for customers using some variation of the customers' names?  Did she use an email address she already controlled or had access to, such as bevschottenstein@aol.com?  Or did she somehow break into otherwise valid customer emails and then enroll those customers in online statement delivery?  Either way, this behavior bears directly on Claimant's claims that a fictitious email was created in her name and provides an additional suspect for this behavior other than Respondents Evan and Avi Schottenstein.

Ms. Donna Greenspan Solomon, Esq.
June 24, 2020
Page 3

   In addition, while it is possible that that bevschottenstein@aol.com was created by Claimant to conduct business for which an email address is required, it is also possible that this address was created by Alexis, without Claimant's knowledge, and in furtherance of her activities at Wells Fargo. Request No. 4 explores this possibility by seeking information from Wells Fargo on whether it has any record of the bevschottenstein@aol.com email, including whether it was among any of the email addresses used by Alexis in enrolling customers in online statement delivery without their knowledge or authorization.

   Rule 12512 of the Code authorizes the Panel to issue subpoenas for the production of documents or the appearance of witnesses for non-parties such as **Wells Fargo Bank, N.A.** For the foregoing reasons, Respondents respectfully request that the Panel sign the enclosed subpoena and return it to Respondents so that they may serve it promptly on **Wells Fargo Bank, N.A.**

   Thank you for your consideration and attention to this matter.

              Sincerely,

              <u>/s/ Jonathan J. Brennan</u>
              Jonathan J. Brennan

cc: Scott C. Ilgenfritz, Esq. (by FINRA Portal)
   Gabrielle L. Gould, Esq. (by FINRA DR Portal)